IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAUN DARNELL GARLAND,<br><br>Plaintiff,<br><br>v.<br><br>KATHLEEN ALLISON, et al.,<br><br>Defendants. | No.  2:21-CV-0796-JAM-DMC-P<br><br><br><br>ORDER |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action under 42 U.S.C. § 1983. Pending before the Court is Plaintiff's original complaint, ECF No. 1.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915A(b)(1), (2).  Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  This means that claims must be stated simply, concisely, and directly.  See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)).  These rules are satisfied if the complaint gives the defendant fair notice of the Plaintiff's claim and the grounds upon which it

1

rests. See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996). Because Plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard. Additionally, it is impossible for the Court to conduct the screening required by law when the allegations are vague and conclusory.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff brings suit against: (1) Kathleen Allison, Secretary of Adult Operations at the California Department of Corrections and Rehabilitation (CDCR); (2) Robert Burton, the warden at the California Health Care Facility (CHCF); and (3) C. Flores, a CDCR employee with Institutional Gang Investigations. See ECF No. 1, pg. 2. Plaintiff claims the events giving rise to the complaint occurred at CHCF in San Joaquin County, California. Id. at 4. Plaintiff raises four claims.

In his first claim, Plaintiff alleges Defendant Flores harassed him with an "entrapment scheme" as punishment for "seeking mental health treatment for clinical diagnosis of bipolar and depression." Id. at 3. When Plaintiff transferred to California State Prison – Los Angeles County (CSP-LAC) in December 2014, Plaintiff claims that Flores purposely transferred Plaintiff to CSP-LAC and prevented Plaintiff from transferring to another facility by conducting 90-day investigation periods to "unveil plaintiff as an 'active prison gang member.'" Id. at 5. Plaintiff claims these 90-day investigations continued until September 2016, when Plaintiff transferred to CHCF for mental health treatment. Id. Plaintiff claims that Flores "maintains a 'virtual presence,' through real time audio/visual connection/video teleconferencing technology" so Flores can observe Plaintiff remotely from CSP-LAC. Id. at 6. According to Plaintiff, Flores also observed and interfered with Plaintiff's personal and legal communications on the phone and through electronic and physical mail. Id.

///
///
///

2

        Plaintiff claims that in 2018, Flores ordered Plaintiff change to a double cell so Flores can place an inmate acting as a "confidential informant" near Plaintiff to observe him and "search plaintiff's property and read his journal and report what they have read to defendant." Id. at 7-8. Plaintiff alleges that Flores arranged for Plaintiff's demotion from a 'Mini Canteen' clerk to canteen probation. Id. at 8. Additionally, Plaintiff claims that in August/September of 2020, Flores arranged for Plaintiff to apply for a "'stimulus check' scam" by directing two inmates to obtain Plaintiff's social security number. Id. Plaintiff claims Flores continually publicized Plaintiff's medical and criminal information "among the varying staff and i/p's-c/i's" and "among plaintiff's family members and his civilian acquaintances, with the intent of causing the loss of fellowship between plaintiff and these civilians" throughout Plaintiff's time at CHCF. Id. at 9. Plaintiff claims that Flores's actions contributed "directly to mental disease for plaintiff." Id. at 10.

        In Plaintiff's second claim, Plaintiff alleges that Flores racially discriminated against Plaintiff to "deprive plaintiff of mental health treatment." Id. at 16. Plaintiff mentions race in relation to Flores and Plaintiff's cellmate, Martinez. Id. at 9. On January 30, 2021, Plaintiff claims Flores "uses the racial affinity between the two Hispanics" to order Martinez into provoking Plaintiff. Id. Plaintiff claims Martinez and Flores provoked Plaintiff into "confrontation and violence during the 0400 hours preparation plaintiff and Martinez make for Islamic prayers." Id. Plaintiff alleges that Martinez reported the confrontation to Flores by phone and that Flores encouraged Martinez with "racial animus." Id.

        Plaintiff's third claim alleges Flores retaliated against Plaintiff for filing staff complaints and electronically filing civil suits against Flores. Id. at 12. Plaintiff claims that Flores rescinded Plaintiff's single-cell status in retaliation for filing several staff complaints. Id. at 7. Plaintiff claims Flores also filed a request "for leave to proceed without prepayment of filing fees" in November of 2019 to remove medical records of a 2013 assault on Plaintiff by a CSP-LAC correctional officer (C/O). Id. at 8. Plaintiff claims Flores removed evidence of injury to his gonads by the C/O so Plaintiff would lose against the C/O's motion for summary judgment. Id. Plaintiff alleges that on February 15, 2021, he informed Defendants Allison and Burton of

Flores's actions. Id. at 10. Because Flores's actions did not cease, Plaintiff claims Allison and Burton endorsed Flores's actions in discrimination and retaliation. Id. at 13.

In Plaintiff's fourth claim, Plaintiff alleges Flores interfered with and influenced staff complaints made against Flores so that they were not processed by the Office of Grievances. Id. at 18. Plaintiff alleges that his petitions were "met with defendants' callous indifference." Id. at 4. After the provocation on January 30, 2021, Plaintiff claims the Office of Grievances rejected his staff complaint because it was duplicative of Plaintiff's two previous complaints. Id. at 10. Plaintiff alleges the rejection was based on Flores's influence on the grievance process so that Flores cannot "be held accountable for his acts and omissions against plaintiff." Id.

## II. DISCUSSION

The Court finds Plaintiff states a cognizable claim for retaliation based on Plaintiff's allegation that Flores intentionally tampered with files relevant to a court case with the intention of causing Plaintiff harm. The Court also finds Plaintiff states a cognizable claim for harassment based on Flores's repeated 90-day investigations, dissemination of Plaintiff's personal information, and continual observation through Martinez and the use of audio/visual technology.

The Court finds Plaintiff fails to state any other cognizable claims, as explained below.

### A. Supervisor Liability

Plaintiff alleges Defendants Allison and Burton are liable because of their positions as Flores's supervisors and that their inaction endorses Flores's actions. Supervisory personnel are generally not liable under § 1983 for the actions of their employees. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983). A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations. See id. The Supreme Court has rejected the notion that a supervisory defendant can be liable based on knowledge and acquiescence in a subordinate's unconstitutional conduct because government officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct and not the conduct of others. See

4

1   Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Supervisory personnel who implement a policy so
2   deficient that the policy itself is a repudiation of constitutional rights and the moving force behind
3   a constitutional violation may, however, be liable even where such personnel do not overtly
4   participate in the offensive act. See Redman v. Cnty of San Diego, 942 F.2d 1435, 1446 (9th Cir.
5   1991) (en banc).

6         When a defendant holds a supervisory position, the causal link between such
7   defendant and the claimed constitutional violation must be specifically alleged. See Fayle v.
8   Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir.
9   1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in
10  civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th
11  Cir. 1982). "[A] plaintiff must plead that each Government-official defendant, through the
12  official's own individual actions, has violated the constitution." Iqbal, 662 U.S. at 676.

13        The Court finds that Plaintiff's claims against Allison and Burton are insufficient.
14  Plaintiff must allege facts that indicate Allison and Burton ordered or participated in Flores's
15  harassment or retaliation. Here, Plaintiff has failed to do so. Plaintiff will be provided the
16  opportunity to amend to further plead his claims against Defendants Allison and Burton.

17      **B.**    **Equal Protection**

18        Plaintiff claims that Flores ordered Martinez to provoke Plaintiff during morning
19  prayers. Equal protection claims arise when a charge is made that similarly situated individuals
20  are treated differently without a rational relationship to a legitimate state purpose. See San
21  Antonio School District v. Rodriguez, 411 U.S. 1 (1972). Prisoners are protected from invidious
22  discrimination based on race. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Racial
23  segregation is unconstitutional within prisons save for the necessities of prison security and
24  discipline. See Cruz v. Beto, 405 U.S. 319, 321 (1972) (per curiam). Prisoners are also protected
25  from intentional discrimination on the basis of their religion. See Freeman v. Arpaio, 125 F.3d
26  732, 737 (9th Cir. 1997). Equal protection claims are not necessarily limited to racial and
27  religious discrimination. See Lee v. City of Los Angeles, 250 F.3d 668, 686-67 (9th Cir. 2001)
28  (applying minimal scrutiny to equal protection claim by a disabled plaintiff because the disabled

do not constitute a suspect class) see also Tatum v. Pliler, 2007 WL 1720165 (E.D. Cal. 2007) (applying minimal scrutiny to equal protection claim based on denial of in-cell meals where no allegation of race-based discrimination was made); Hightower v. Schwarzenegger, 2007 WL 732555 (E.D. Cal. March 19, 2008).[1]

In order to state a § 1983 claim based on a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must allege that defendants acted with intentional discrimination against plaintiff, or against a class of inmates which included plaintiff, and that such conduct did not relate to a legitimate penological purpose. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (holding that equal protection claims may be brought by a "class of one"); Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740 (9th Cir. 2000); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998); Federal Deposit Ins. Corp. v. Henderson, 940 F.2d 465, 471 (9th Cir. 1991); Lowe v. City of Monrovia, 775 F.2d 998, 1010 (9th Cir. 1985).

With the facts as pleaded, it is unclear whether Flores had the intention to discriminate against Plaintiff based on Plaintiff's race or religion. Considering Plaintiff's claim that Flores campaigned to harass Plaintiff, there are not enough facts to separate this incident from all other acts of alleged harassment or to indicate that Flores acted with discriminatory intent. Plaintiff will be provided an opportunity to amend to further plead his equal protection claim.

### III.  CONCLUSION

Because it is possible that the deficiencies identified in this order may be cured by amending the complaint, Plaintiff is entitled to leave to amend. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc). Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). Therefore, if Plaintiff amends the complaint, the Court cannot refer to the

---

[1] **Error! Main Document Only.**Strict scrutiny applies to equal protection claims alleging race-based or religious discrimination (i.e., where the plaintiff is member of a "protected class"); minimal scrutiny applies to all other equal protection claims. See Lee v. City of Los Angeles, 250 F.3d 668, 686-67 (9th Cir. 2001).

prior pleading in order to make Plaintiff's amended complaint complete. See Local Rule 220. An amended complaint must be complete in itself without reference to any prior pleading. See id.

If Plaintiff chooses to amend the complaint, Plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named defendant is involved, and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation. See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Because the complaint appears to otherwise state cognizable claims, if no amended complaint is filed within the time allowed therefor, the Court will issue findings and recommendations that the claims identified herein as defective be dismissed, as well as such further orders as are necessary for service of process as to the cognizable claims.

Accordingly, IT IS HEREBY ORDERED that Plaintiff may file a first amended complaint within 30 days of the date of service of this order.

Dated:  June 11, 2021

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE