IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SHAUN DARNELL GARLAND,

Plaintiff,

v.

KATHLEEN ALLISON, et al.,

Defendants.

No.  2:21-CV-0796-DAD-DMC-P

FINDINGS AND RECOMMENDATIONS

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Defendants' motion for summary judgment. See ECF No. 101.  Plaintiff has filed an opposition, see ECF No. 105, and Defendants have filed a reply, see ECF No. 107.  Also before the Court is Plaintiff's filing which has been docketed as a motion for summary judgment. See ECF No. 104.  In this two-page filing, Plaintiff states that, as of the date it was filed, he had not received any dispositive motion from Defendants.[1] See id. at 2.  Plaintiff asserts that summary judgment in his favor is appropriate because Defendants did not file a dispositive motion. See id.  Plaintiff makes no other argument and provides no exhibits

---

[1]      Defendants' motion was served by mail on March 14, 2025.  Plaintiff's motion was served by mail on March 11, 2025.  It thus appears that Plaintiff simply had not yet received Defendants' motion at the time he filed his motion.  Further, given that Plaintiff has filed a substantive opposition to Defendants' motion for summary judgment, it is clear that he in fact received it.

1

with this filing.  Defendants have filed an opposition, see ECF No. 106, and Plaintiff has filed a reply, see ECF No. 108.

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The standard for summary judgment and summary adjudication is the same.  See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).  To demonstrate that an issue is genuine, the opposing party "must do more than

2

simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).  It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.

In resolving the summary judgment motion, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251.

## I.  PLAINTIFF'S ALLEGATIONS

Following screening of Plaintiff's original complaint, this action proceeds on Plaintiff's first amended complaint. See ECF No. 10. Plaintiff names Kathleen Allison, Robert Burton, C. Flores, Urrea, Murillo, and Cummings as defendants. See id.  In their motion for summary judgment, Defendants provide the following summary of Plaintiff's allegations, which Plaintiff does not dispute and which the Court accepts:

Defendant Flores

In his First Amended Complaint, Garland alleges that Defendant Flores harassed him with an "entrapment scheme" since at least 2011. (ECF No. 10 at 2–3.) Garland also alleges that Flores continued his entrapment schemes from 2012 to 2015 by deploying Hispanic confidential informant inmates to provoke him into confrontations or

3

violence. (*Id*. at 6–7.) Garland further alleges that Flores and his cabal improperly placed him in administrative segregation at the California State Prison, Los Angeles County (CSP-LAC) in August 2011. (*Id*. at 7–9.) Garland alleges that Flores and his cabal again tried to provoke him in early 2012, by injuring his gonads. (*Id*. at 9.) Garland further alleges that Flores purposely transferred him from Iron Wood State Prison to CSP-LAC in December 2014, and prevented Garland from transferring to another prison by initiating 90-day investigation periods to "unveil plaintiff as an 'active prison gang member.'" (*Id*. at 3, 10, 24.) Garland claims that these 90-day investigations by Flores started while he was at Iron Wood State Prison in 2014, and continued until September 2016, when Garland transferred to California Health Care Facility (CHCF) for mental health treatment. (*Id*. at 3, 4–6, 10.) Garland further claims that, even after he was transferred to CHCF, Flores "maintains a 'virtual presence' through real time audio/visual connection/video teleconferencing technology" to observe Garland remotely from CSP-LAC. (*Id*. at 3, 11.) Garland further alleges that, after two of the 90-day investigation periods failed to achieve the objective of exposing Garland as an active prison gang member, Flores angrily told him that "everybody is going to know who you really are," and later publicized Garland's medical and confidential criminal file information to medical and custody staff, Garland's family members, and his civilian acquaintances. (*Id*. at 4, 10, 14.) Garland further alleges that Flores who is at CSP-LAC directed CHCF custody staff to relay Garland's outgoing mail to CHCF's housing unit E1A, where Flores could virtually inspect them through real time audio/video connection. (*Id*. at 12.)

Garland also accuses Flores of filing, without authorization, a request for leave to proceed in forma pauperis on November 20, 2019, in one of Garland's other lawsuits, *Garland v. Lewis*, Case No. 2:10-cv-09010-FMO-OP. (*Id*. at 13.) Garland claims that case was already closed in 2013, and there was no need for the in forma pauperis request. (*Id*.) Garland further alleges that in January 2021, Flores spied on him using his cellmate, Inmate Martinez. (*Id*. at 15, 25.) Garland alleges that Flores directed Defendant Murillo to release Inmate Martinez from his cell for a phone call with Flores. (*Id*. at 25.) Garland claims Martinez was Flores's confidential informant.

Garland further alleges that Flores retaliated against him for filing staff complaints and lawsuits against Flores. (ECF NO. 10 at 24.) Garland claims that he filed inmate grievances against Flores on February 15, 2021, under grievance log numbers 75501 and 87562. (*Id*. at 25.) Garland claims that Flores's actions caused him "mental disease." (*Id*. at 15, 18, 25.)

Defendants Allison and Burton

Garland alleges that Defendants Allison and Burton violated his rights when they failed to supervise their subordinates and failed to act on Garland's staff misconduct inmate appeals. (*Id*. at 16–18.) Garland alleges that on February 15, 2021, he made Defendants Allison and Burton aware of Flores's misconducts by sending them copies of his inmate grievances against Flores. (*Id*. at 16.) Garland claims that Allison, as the secretary of CDCR, and Burton, as the warden of CHCF) endorsed Flores's actions by failing to respond appropriately, investigate the misconduct, or supervise Flores. (*Id*. at 16, 19-20.) Garland claims that Allison and Burton ignored his inmate grievances and failed to ensure

4

adequate oversight over subordinate staff. (*Id*. at 19–21.) Garland further alleges that Burton placed himself above accountability, encouraged subordinates not to comply with departmental policies and employed unwritten identity policy. (*Id*. at 21–23.)

<u>Defendants Cummings, Urrea, and Murillo</u>

Garland alleges that Defendants Cummings, Urrea, and Murillo were Flores's emissaries at CHCF. Specifically, Garland alleges that Defendant Cummings acted as Flores's emissary by harassing him, searching his cell, damaging his property, and tampering with his mail. (*Id*. at 17–18, 28.) Garland also alleges that Defendant Murillo issued him a rules violation report for refusing a cellmate and delaying inmate count. (*Id*. at 18.) Garland also alleges that Defendant Urrea was one of Defendant Flores's "implementers of the entrapment scheme ninety (90) day investigation," who in collaboration with Defendant Murillo tried to assign a cellmate to Garland on June 23, 2021. (*Id*. at 26–27.) Garland claims that the intended cellmate was a confidential informant. (*Id*. at 27.)

<u>See</u> ECF No. 101-1, pgs. 7-9.

## II.  THE PARTIES' EVIDENCE

### A.      **<u>Defendants' Evidence</u>**

Defendants' motion is supported by: (1) a statement of undisputed facts, ECF No. 101-2; (2) the declaration of Defendants' counsel Howard Moseley, Esq., ECF No. 101-3, and Exhibits A through I attached thereto, ECF Nos. 101-4 through 101-12; (3) the declaration of S. De Jesus, the Grievance Coordinator at California Health Care Facility, ECF No. 101-13, and Exhibits A through K attached thereto, ECF Nos. 101-14 through 101-24; and (4) a request for judicial notice, ECF No. 101-25.

Defendants assert the following relevant facts are undisputed:

8.      Garland is familiar with the California Department of Corrections and Rehabilitation's inmate grievance process, and during the relevant time in this lawsuit – July 2019 to July 2021 – Garland initiated seventeen grievances.  De Jesus Decl., ¶¶ 13-25; Moseley Decl., ¶¶ 6-15.

9.      Six of the seventeen grievances (OOA-19-01851, CHCF-19-02991, CHCF-19-02850, Log number 0136833, Log number 0110923, and Log number 070465) were exhausted through the final level of review.  De Jesus Decl., ¶¶ 16-25; Moseley Decl., ¶¶ 8-15.

/ / /

/ / /

5

10.     Four of the seventeen grievances (Log numbers 1912248, 1915749, 2001022, and 2001029) were screened out at the headquarters' level of review for impermissibly bypassing the institutional level review. Moseley Decl., ¶¶ 10-13.

11.     Seven of the seventeen grievances (Log numbers 048680, 052645, 075501, 087562, 0118728, 0124387, and 0132669) were not exhausted through the final level of review.  De Jesus Decl., ¶¶ 13-25.

12.     Of the six exhausted inmate grievances, only Log numbers 0136833 and 0110923 are related to Garland's claims in this lawsuit.  De Jesus Decl., ¶¶ 13-25; Moseley Decl., ¶¶ 14-15.

13.     Garland submitted grievance Log number 0136833 for institutional-level review on June 28, 2021. In it, Garland complained that (1) Defendant Murillo improperly assigned another inmate to Plaintiff's cell; (2) Defendants Murillo and Flores improperly ordered Plaintiff's cellmate to spy on Plaintiff; and (3) Defendant Flores improperly retaliated against Plaintiff by direct[ing] that Plaintiff receive a Rules Violation Report (RVR).  De Jesus Decl., ¶ 17, Ex. C; Moseley Decl., ¶ 15, Ex. I.

14.     On July 26, 2021, the Grievance Office disapproved the first claim in Log number 0136833 against Murillo because there were no facts that precluded Garland from double celling. The Grievance Office rejected Garland's second claim against Murillo because it was untimely. The Grievance Office also disapproved Garland's claim against Flores because the RVR was issued for refusing to accept a cellmate and Garland admitted in the grievance that he refused a new cellmate.  De Jesus Decl., ¶ 17, Ex. C; Moseley Decl., ¶ 15, Ex. I.

15.     Garland appealed the decisions in Log number 0136833 to the Office of Appeals (OOA), but on November 1, 2021, the OOA affirmed the rejection and disapprovals. Garland made no reference to Defendants Allison, Burton, Cummings, or Urrea in grievance Log number 0136833.  De Jesus Decl., ¶ 17, Ex. C; Moseley Decl., ¶ 15, Ex. I.

16.     Garland submitted grievance Log number 0110923 for institutional-level review on April 20, 2021. In it, Garland complained that Defendant Flores ordered staff at the California Health Care Facility to search Plaintiff's cell and damage Plaintiff's typewriter in retaliation for Plaintiff's "legal filings."  De Jesus Decl., ¶ 18, Ex. D; Moseley Decl., ¶ 14, Ex. H.

17.     On May 8, 2021, the Grievance Office disapproved grievance Log number 0110923 because CSP-LAC did not have an IGI officer named Flores and there was no evidence that Garland's property was damaged. Garland appealed the decisions to the OOA, but on August 23, 2021, the OOA closed the appeal as "time expired."  De Jesus Decl., ¶ 18, Ex. D; Moseley Decl., ¶ 14, Ex. H.

18.     Garland made no reference to Defendants Allison, Burton, Cummings, Murillo, or Urrea in grievance Log number 0110923.  De Jesus Decl., ¶ 18, Ex. D; Moseley Decl., ¶ 14, Ex. H.

6

19. Garland submitted grievance Log number 048680 for institutional-level review on October 12, 2020. In it, Garland complained that the Walken Horsts Inmate Package Company notified him on September 22, 2020, that there was no prepaid account for Plaintiff. Garland surmised that it was because of a "stimulus check scam" that was crafted by Flores to trap Plaintiff. De Jesus Decl., ¶ 19, Ex. E.

20. On October 13, 2020, the Grievance Office rejected grievance Log number 048680 because it was outside of the jurisdiction of the grievance process. But Garland did not appeal the rejection to OOA for final level review. De Jesus Decl., ¶ 19, Ex. E; Moseley Decl., ¶ 16.

21. Garland made no reference to Defendants Allison, Burton, Cummings, Murillo, or Urrea in grievance Log number 048680. De Jesus Decl., ¶ 19, Ex. E.

22. Garland submitted grievance Log number 052645 for institutional-level review on October 23, 2020. In it, Garland complained that Officer Flores turned his then cellmate (Inmate Martinez) into a confidential informant. De Jesus Decl., ¶ 20, Ex. F.

23. On October 27, 2020, the Grievance Office redirected grievance Log number 052645 to a CHCF administrator to address Garland's allegations. Garland did not appeal any decision from this grievance to the OOA. De Jesus Decl., ¶ 20, Ex. F.

24. Garland made no reference to Defendants Allison, Burton, Cummings, Murillo, or Urrea in grievance Log number 052645. De Jesus Decl., ¶ 20, Ex. F.

25. Garland submitted grievance Log number 075501 for institutional-level review on January 6, 2021. In it, Garland complained that Officer Flores violated his rights in 2015 and 2016 by publicizing his confidential medical, mental health, and other records. De Jesus Decl., ¶ 21, Ex. G.

26. On January 7, 2021, the Grievance Office notified Garland that his grievance Log # 075501 was forwarded to California State Prison, Los Angeles County (CSP-LAC) as Garland alleged that Flores was an IGI Officer at CSP-LAC. The Grievance Office at CSP-LAC processed the grievance under a new log number 077802, and rejected it on January 13, 2021, as untimely because it was submitted several years after the alleged incident. Garland did not appeal the rejection to OOA for final level review. De Jesus Decl., ¶ 21, Ex. G.

27. Garland made no reference to Defendants Allison, Burton, Cummings, Murillo, or Urrea in grievance Log numbers 075501 or 077802. De Jesus Decl., ¶ 21, Ex. G.

28. Garland submitted grievance Log number 087562 for institutional-level review on February 8, 2021. In it, Garland complained that Officer Flores continued to "counterintelligence" or spy on him through Garland's cellmate Martinez on January 30, 2021. Garland also complained about his cellmate Inmate Martinez. De Jesus Decl., ¶ 22, Ex. H.

7

29.    On February 10, 2021, the Grievance Office forwarded Garland's claim in grievance Log number 087562 regarding his complaint against Inmate Martinez to a facility captain. But the Grievance Office rejected Garland's claim against Flores as duplicative of Garland's other inmate grievances. Garland did not appeal the rejection to OOA for final level review. De Jesus Decl., ¶ 22, Ex. H.

30.    Garland made no reference to Defendants Allison, Burton, Cummings, Murillo, or Urrea in grievance Log number 087562.  De Jesus Decl., ¶ 22, Ex. H.

31.    Garland submitted grievance Log number 0118728 for institutional-level review on May 14, 2021. In it, Garland complained that a CHCF Building Officer had a video teleconferencing with Officer Flores from CSP-LAC, and Flores had the Officer conduct cell searches without leaving a cell search receipt on May 5, 2021. Garland requested that Secretary Allison and Warden Burton prevent any further retaliatory policy breaches by Flores.  De Jesus Decl., ¶ 23, Ex. I.

32.    On June 3, 2021, the Grievance Office disapproved grievance Log # 0118728 stating that neither CHCF nor CSP-LAC had an IGI Officer named C. Flores and finding that Garland's cell was not searched on May 5, 2021. Garland did not appeal this grievance to OOA for final level review. De Jesus Decl., ¶ 23, Ex. I.

33.    Garland made no claim against Defendants Allison, Burton, Cummings, Murillo, or Urrea in grievance Log # 0118728.  De Jesus Decl., ¶ 23, Ex. I.

34.    Garland submitted grievance Log number 0124387 for institutional-level review on June 2, 2021. In it, Garland complained that IGI Officer C. Flores from CSP-LAC ordered the damaging of his liquid soap cap at CHCF in retaliation for Garland's protected conduct.  De Jesus Decl., ¶ 24, Ex. J.

35.    On June 18, 2021, the Grievance Office disapproved Garland's grievance Log # 0124387 stating that neither CHCF nor CSP-LAC had an IGI Officer named C. Flores and finding that Garland's cell was not searched on May 20, 2021. Garland did not appeal this grievance to OOA for final level review.  De Jesus Decl., ¶ 24, Ex. J.

36.    Garland made no claim against Defendants Allison, Burton, Cummings, Murillo, or Urrea in grievance Log # 0124387.  De Jesus Decl., ¶ 24, Ex. J.

37.    Garland submitted grievance Log number 00132669 for institutional-level review on June 14, 2021. In it, Garland complained that IGI Officer C. Flores from CSP-LAC ordered more property damage in retaliation for Garland's protected conduct.  De Jesus Decl., ¶ 25, Ex. K.

38.    On June 25, 2021, the Grievance Office rejected Garland's grievance Log number 00132669 because it was determined that the claim was substantially duplicative of Garland's other grievance log number 0124387. Garland did not appeal the rejection decision to OOA.  De Jesus Decl., ¶ 25, Ex. K.

8

39.     Garland made no claim against Defendants Allison, Burton, Cummings, Murillo, or Urrea in grievance Log number 0132669.  De Jesus Decl., ¶ 25, Ex. K.

40.     Garland submitted grievance Log number 1912248 directly for a headquarters-level review on September 9, 2019. In it, Garland complained that prison officials conspired to "ensnare" Plaintiff for theft of ducats in retaliation for exercising Plaintiff's right to file grievances. Plaintiff further alleged that Sergeant Hammoudeh conspired with "two CDCR Special Agents" and that all three "have knowledge of Special Agents monitoring/investigation of Plaintiff while in the general population of CDCR since July 2000." Moseley Decl. ¶ 10, Ex. D.

41.     On October 17, 2019, the OOA screened out Garland's grievance Log # 1912248 and forwarded it to the local Office of Grievances because Garland impermissibly bypassed the first level of review. Moseley Decl. ¶ 10, Ex. D.

42.     Garland made no reference to Defendants Allison, Burton, Cummings-Ivey, Flores, Murillo, or Urrea in grievance Log number 1912248. Moseley Decl. ¶ 10, Ex. D.

43.     Garland submitted grievance Log number 1915749 directly for a headquarters'-level review on December 9, 2019. In it, Garland complained that prison officials and special agents planned to entrap him in gang activity to remove him from the CHCF. Garland further alleged that the Hiring Authority is a co-conspirator and meets regularly with the special agents to learn about the status of their investigations.  Moseley Decl. ¶ 11, Ex. E.

44.     On December 24, 2019, the OOA screened out Garland's appeal Log No. 1915749, and forwarded it to the local Office of Grievances because Garland submitted the appeal for processing at an inappropriate level bypassing required lower level of review.  Moseley Decl. ¶ 11, Ex. E.

45.     Garland made no reference to Defendants Allison, Burton, Cummings-Ivey, Flores, Murillo, or Urrea in the appeal or underlying grievance.  Moseley Decl. ¶ 11, Ex. E.

46.     Garland submitted grievance Log number 2001022 directly for a headquarters'-level review on January 27, 2020. In it, Garland complained that prison officials tampered with his outgoing mail. Garland further alleged that investigator Juan Doe willfully violated the Penal Code by impersonating another through the internet or other electronic means with the intent to harm, intimidate, threaten, or defraud.  Moseley Decl. ¶ 12, Ex. F.

47.     On February 3, 2020, the OOA screened out Garland's grievance Log number 2001022, and forwarded it to the local Office of Grievances because Garland submitted the appeal for processing at an inappropriate level bypassing required lower level of review.  Moseley Decl. ¶ 12, Ex. F.

/ / /

48.     Garland made no reference to Defendants Allison, Burton, Cummings-Ivey, Flores, Murillo, or Urrea in grievance Log number 2001022.  Moseley Decl. ¶ 12, Ex. F.

49.     Garland submitted grievance Log number 2001029 directly for a headquarters'-level review on January 27, 2020. In it, Garland complained that somebody at California State Prison-Los Angeles County used Plaintiff's name without permission to electronically file a motion with the court (a Request for Leave to Proceed) without prepayment of filing fees.  Moseley Decl. ¶ 13, Ex. G.

50.     On February 3, 2020, the OOA screened out Garland's grievance Log number 2001029, and forwarded it to the local Office of Grievances because Garland submitted the appeal for processing at an inappropriate level bypassing required lower level of review.  Moseley Decl. ¶ 13, Ex. G.

51.     Garland made no reference to Defendants Allison, Burton, Cummings-Ivey, Flores, Murillo, or Urrea in grievance Log number 2001029.  Moseley Decl. ¶ 13, Ex. G.

ECF No. 101-2.

Defendants have also filed a request for judicial notice asking the Court to judicially notice Exhibits 1 and 2 attached thereto.  See ECF No. 101-25.  Exhibit 1 is a printout of CDCR's inmate locator record showing that Plaintiff is serving a life sentence without the possibility of parole.  See id. at 5-6.  Exhibit 2 is a printout of the court's docket report for Garland v. Lewis, Central District of California case no. 2:10-cv-9010-FMO-OP, showing the case history for that matter.  See id. at 8-12.  Because the Court may take judicial notice pursuant to Federal Rule of Evidence 201 of matters of public record, the Court will recommend that Defendants' request for judicial notice be granted.  See U.S. v. 14.02 Acres of Land, 530 F.3d 883, 894 (9th Cir. 2008); see also Chandler v. U.S., 378 F.2d 906, 909 (9th Cir. 1967).

**B.      Plaintiff's Evidence**

Plaintiff has filed an opposition to Defendants' motion for summary judgment. See ECF No. 105.  No evidence is submitted with this filing.

/ / /

/ / /

/ / /

/ / /

10

## III. DISCUSSION

In their motion for summary judgment, Defendants primarily argue that they are entitled to judgment in their favor as a matter of law because Plaintiff failed to exhaust administrative remedies prior to filing suit.  See ECF No. 101-1, pgs. 17-21.  For the reasons discussed below, the undersigned finds this issue to be dispositive.

Prisoners seeking relief under § 1983 must exhaust all available administrative remedies prior to bringing suit.  See 42 U.S.C. § 1997e(a).  This requirement is mandatory regardless of the relief sought.  See Booth v. Churner, 532 U.S. 731, 741 (2001) (overruling Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999)).  Because exhaustion must precede the filing of the complaint, compliance with § 1997e(a) is not achieved by exhausting administrative remedies while the lawsuit is pending.  See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002).  The Supreme Court addressed the exhaustion requirement in Jones v. Bock, 549 U.S. 199 (2007), and held: (1) prisoners are not required to specially plead or demonstrate exhaustion in the complaint because lack of exhaustion is an affirmative defense which must be pleaded and proved by the defendants; (2) an individual named as a defendant does not necessarily need to be named in the grievance process for exhaustion to be considered adequate because the applicable procedural rules that a prisoner must follow are defined by the particular grievance process, not by the PLRA; and (3) the PLRA does not require dismissal of the entire complaint if only some, but not all, claims are unexhausted.  The defendant bears burden of showing non-exhaustion in the first instance.  See Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014).  If met, the plaintiff bears the burden of showing that the grievance process was not available, for example because it was thwarted, prolonged, or inadequate.  See id.

The Supreme Court held in Woodford v. Ngo that, in order to exhaust administrative remedies, the prisoner must comply with all of the prison system's procedural rules so that the agency addresses the issues on the merits.   548 U.S. 81, 89-96 (2006).  Thus, exhaustion requires compliance with "deadlines and other critical procedural rules."  Id. at 90.  Partial compliance is not enough.  See id.  Substantively, the prisoner must submit a grievance which affords prison officials a full and fair opportunity to address the prisoner's claims.  See id.

11

at 90, 93.  The Supreme Court noted that one of the results of proper exhaustion is to reduce the quantity of prisoner suits "because some prisoners are successful in the administrative process, and others are persuaded by the proceedings not to file an action in federal court." Id. at 94. When reviewing exhaustion under California prison regulations which have since been amended, the Ninth Circuit observed that, substantively, a grievance is sufficient if it "puts the prison on adequate notice of the problem for which the prisoner seeks redress. . . ." Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009); see also Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010) (reviewing exhaustion under prior California regulations).

Exhaustion is defined by the prison, not the PLRA. See Reyes v. Smith, 810 F.3d 654, 657 (9th Cir. 2016) (quoting Jones v. Bock, 549 U.S. 199, 218 (2007)). Until June 1, 2020, when regulations relating to inmate grievances were amended, a prison inmate in California satisfied the administrative exhaustion requirement by following the procedures set forth in §§ 3084.1-3084.8 of Title 15 of the California Code of Regulations.  Inmates "may appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate . . . can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a); see also Munoz v. Cal. Dep't of Corrs., 2020 WL 5199517, at *6 (C.D. Cal. July 24, 2020).

Under the pre-2020 regulations, the inmate must submit their appeal on the proper form and is required to identify the staff member(s) involved as well as describing their involvement in the issue. See Cal. Code Regs. tit. 15, § 3084.2(a).  These regulations require the prisoner to proceed through three levels of appeal. See Cal. Code Regs. tit. 15, §§ 3084.1(b), 3084.2, 3084.7.  A decision at the third formal level, which is also referred to as the director's level, is not appealable and concludes a prisoner's departmental administrative remedy. See id. Departmental appeals coordinators may reject a prisoner's administrative appeal for a number of reasons, including untimeliness, filing excessive appeals, use of improper language, failure to attach supporting documents, and failure to follow proper procedures. See Cal. Code Regs. tit. 15, §§ 3084.6(b).  If an appeal is rejected, the inmate is to be provided clear instructions how to cure the defects therein. See Cal. Code Regs. tit. 15, §§ 3084.5(b), 3084.6(a).  Group appeals are

permitted on the proper form with each inmate clearly identified and signed by each member of the group.  See Cal. Code Regs. tit 15, § 3084.2(h).

Under the revised regulations applicable in 2020 and after, inmates were still required to identify all staff members involved in the claim, including names, titles, and any other information that could help ascertain their identities.  See Cal. Code Regs. tit. 15, § 3482(c)(2). The inmate is also required to describe the named staff members' involvement and how they allegedly violated the inmates' rights.  See id.  The revised grievance process requires inmates to pursue two levels of grievance review – the institutional level, and the director's level conducted by the OOA.  See Cal. Code Regs. tit. 15, § 3481(a)–(b).  A decision by the OOA exhausts administrative remedies.  See Cal. Code Regs. tit. 15, § § 3485(I).

The undisputed evidence in this case shows that Plaintiff submitted 17 grievances prior to filing suit on May 2, 2021.  Four of the 17 grievances (Log numbers 1912248, 1915749, 2001022, and 2001029) were screened out at the headquarters' level of review for impermissibly bypassing the institutional level review.  These grievances, therefore, could not have satisfied the exhaustion requirement for this case because they were procedurally improper and were not decided on the merits at the final level of review.  Seven of the 17 grievances (Log numbers 048680, 052645, 075501, 087562, 0118728, 0124387, and 0132669) were not exhausted through the final level of review.   These grievances also could not have satisfied the exhaustion requirement because none was decided on the merits at the final level of review.

Six of the 17 grievances (OOA-19-01851, CHCF-19-02991, CHCF-19-02850, Log number 0136833, Log number 0110923, and Log number 070465) were exhausted through the final level of review.  Of the six exhausted grievances, only two – log number 0136833 and Log number 0110923 – are related to the claims asserted in this case.  The Court will examine both below to determine whether they satisfied the exhaustion requirement for the defendants named in this action and claims asserted.

/ / /

/ / /

/ / /

Log number 0136833

Documentation related to this grievance is provided at Exhibit C to the De Jesus declaration.  See ECF No. 101-16.  As to this grievance, Defendants argue:

> In grievance log number 0136833, Garland exhausted only one claim against Flores for allegedly issuing him a retaliatory RVR and a claim against Murillo for attempting to assign a cellmate to Garland. (SUF 13–15.) Garland's claim, in this grievance, that Murillo spied on him is not exhausted because it was rejected as. . .untimely. (SUF 14.) Cal. Code Regs., tit. 15, § 3487(a)(1). Additionally, Garland's claims in this lawsuit against Murillo are not based on an allegation that Murillo assigned Garland a cellmate. (*See generally* ECF No. 10.) Accordingly, grievance log number 0136833 does not exhaust any claim against Defendants Allison, Burton, Cummings, Murillo, or Urrea.

ECF No. 101-1, pg. 19.

Exhibit C reflects that grievance Log number 0136833 concerns Plaintiff's claims that: (1) Murillo improperly attempted to place another inmate in Plaintiff's assigned cell; (2) Murillo, under the direction of Flores, ordered Plaintiff's cellmate to spy on Plaintiff; and (3) Flores issued a retaliatory rules violation report.  See ECF No. 101-16.  The first claim was rejected at the institutional level because state regulations do not preclude Plaintiff from having a cellmate.  See id.  The second claim was rejected as untimely.  See id.  The third claim was rejected because the rules violation report was properly issued for Plaintiff's refusal to accept a cellmate, which Plaintiff admitted to doing.  See id.  This grievance makes no mention of Defendants Allison, Burton, Cummings, or Urrea.  See id.

The Court agrees with Defendants that grievance Log number 0136833 failed to exhaust administrative remedies as to Defendants Allison, Burton, Cummings, or Urrea because they are not identified in the grievance, as required under both prior and revised California regulations. See Cal. Code Regs. tit. 15, § 3084.2(a) (former regulation); Cal. Code Regs. tit. 15, § 3482(c)(2) (revised regulation).  The Court also agrees that, under the prior and revised regulations, this grievance failed to exhaust administrative remedies as to Defendant Murillo because the claims asserted in the grievance – that Murillo improperly assigned Plaintiff a cellmate and that Murillo spied on Plaintiff – are not alleged in Plaintiff's lawsuit.  See id.  While Plaintiff asserts in this case that Murillo is liable for improperly issuing a false rules violation

14

report for refusing a cellmate, this is a retaliation claim distinct from the issue presented in Plaintiff's grievance that Murillo improperly assigned a cellmate in the first instance.  Similarly, while Plaintiff claims in this case that Flores engaged in a generalized and long-standing pattern of harassment against him, Plaintiff's grievance does not relate to this alleged pattern of harassment.  Rather, the grievance against Flores is based on Plaintiff's assertion that Flores retaliated on a specific occasion and directed Murillo to spy on Plaintiff on a specific occasion.  Thus, grievance Log number 0136833 failed to exhaust administrative remedies as to Flores.

Log number 0110923

Documentation related to this grievance is provided at Exhibit D to the De Jesus declaration.  See ECF No. 101-17.  As to this grievance, Defendants argue:

> . . . In grievance log number 0110923, Garland complained that Flores retaliated against him by ordering cell searches that resulted in damaging Garland's typewriter. (SUF 16–18.) Grievance log number 0110923 does not exhaust any claim against Defendants Allison, Burton, Cummings, Murillo, or Urrea because Garland made no complaint or reference against any of these Defendants in the grievance, and the grievance was processed only against Defendant Flores. (SUF 16–18.)

ECF No. 101-1, pg. 19.

Exhibit D reflects that grievance Log number 0110923 concerns Plaintiff's claim that Flores ordered CHCF staff to search Plaintiff's cell and damage Plaintiff's typewriter in retaliation for Plaintiff's legal filings.  See ECF No. 101-17.  The grievance was denied at the final level because there was no evidence that Plaintiff's property was damaged.  See id.  This grievance makes no mention of Defendants Allison, Burton, Murillo, Cummings, or Urrea.  See id.

As with grievance Log number 0136833, the Court agrees with Defendants that grievance Log number 0110923 also failed to exhaust administrative remedies as to Defendants Allison, Burton, Cummings, or Urrea because they are not identified in the grievance, as required under both prior and revised California regulations.  See Cal. Code Regs. tit. 15, § 3084.2(a) (former regulation); Cal. Code Regs. tit. 15, § 3482(c)(2) (revised regulation).  For the same reason, grievance Log number 0110923 failed to exhaust administrative remedies as to Murillo.  See id.  This grievance also failed to exhaust administrative remedies as to Flores because the

15

issue raised in the grievance – that Flores ordered CHCF staff to search his cell and damage his typewriter – is not related to the claim against Flores in this case – that Flores engaged in a long-standing pattern of harassment unrelated to the particular cell search alleged in the grievance and unrelated to Plaintiff's typewriter.

## IV.  CONCLUSION

Based on the foregoing, the undersigned recommends as follows:

1.      Defendants' request for judicial notice, ECF No. 101-25, be GRANTED.

2.      Defendants' motion for summary judgment, ECF No. 101, be GRANTED.

3.      Plaintiff's motion, docketed as a motion for summary judgment, ECF No. 104, be DENIED as moot.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court.  Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  March 27, 2026

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

16